Next case please. 308-1050 Stephen Talani, power by Robert Kaplan v. Heironymus, et al. I believe at Beckett-Garment. Mr. Kaplan, good morning. Good morning. Will you please the court, Mr. Chairman. We're here today appealing an order of summary judgment which denied Stephen Taliani, my client, summary judgment in his favor to obtain certain records he had requested under the Freedom of Information Act. We're also appealing the fact that they gave summary judgment, awarded summary judgment to the defendant. Mr. Taliani filed the case pro se. Later on, I got into it, filed an amended complaint and tried to take as much of the surplus out as possible to put down what we needed for our prima facie case. And the prima facie case is that he made a request of a public body, in this case, Connie Heironymus, and her capacity as the county clerk of Bureau County. And she's the one who put out a list that's attached to the complaint that says what records are available for review, what public records are there, and voter records are on that list. Well, he made a request for them, and the request was denied on the grounds that if he would give those records over, it would be clearly an unwarranted invasion of the personal privacy of the voters in question. Well, he appealed that to Mr. Garment. Just for clarity, the voters in question are the jurors that convicted your client of murder. That's correct. That's correct. He feels that with this, well, one of the people that came out, he feels that if he can find there was some irregularity in the voter's card, maybe it's a residency or whatever, that maybe they should not have been on that jury to begin with, that might give him some relief from the conviction that he had. Do you think? I mean, isn't it way too late to object to the jury panel? I'm going to let his criminal attorney worry about that. He just asked me to help him get these records to do what he wants with them. And also, he's entitled to them under the status of this case, I think, without reason. Now, there are reasons. We told Judge Doherty in the trial court there were reasons. But are these public records, did he make a demand for them, and has there been an exemption raised? And in the administrative level, there was a demand, it was a request, a denial, and an exemption was cited within the language of the statute, but nothing more. And then the same thing on the appeal level to Mr. Herman. But the next step was for him to file the complaint. And the complaint alleges that he made the request. It was denied, and it's a violation. And as far as that goes, that's a crime of facial case, and there's no opposition to that. He's entitled to the records that he requested. But in litigation, it usually doesn't stop there. An answer was filed, and the answer denied that they were public records, but didn't deny the request was made. And I believe the public records, I don't think there's really an issue about that. And I'll leave my arguments for that in the brief, on the stern, to show that these are public records. The voter registration cards are public records and would be subject to the Freedom of Information Act unless an exemption, a proper exemption, were raised. So that status, next step, it goes to the answer, as I said. And there is no real question of fact as to he made the request or that it was denied. And therefore, if nothing else is said, he's entitled to the records. Next step in the answer, though, is an affirmative defense. Because denying, they didn't deny the request was made. They didn't deny that they did not grant the request. So they have to come up with something more affirmative than that. They have to come up with an affirmative defense. See, for a dissembly judgment, you have to have a, it's based upon the record, the pleadings, depositions, affidavits, whatever affirmative matter you might have from discovery, whatever. Then you can see whether a question of fact exists. But the first step is the pleadings. If you don't plead your case, you can't have summary judgment on your case. And they didn't plead the case. So make sure I look at the answer one more time. They respond to the basic allegations. There's no real, the allegations are basically admitted. Now we go to the next step for the affirmative defense, and it is not there. They have to plead it. The case, all the cases say that they must plead and prove the exemption which they claim. And it's just a matter that it could be subject to adversary testing. The first part of adversary testing is state your case. What is your affirmative defense? What are the facts? Under the Bowden case, it says that if you just recite the language of the statute itself, there's no clue as to how that particular citation, how that particular exemption would apply to this case. And in this case, it's supposed to be clearly unwarranted invasion of personal privacy. How? You look at Southern Illinois when they had the case of going into the registry for cancer patients, and they wanted to find out, said there would be a threat to disclosure of the names of these people, of these cancer victims, if they allowed that. That's one of the defenses. And the Supreme Court said, how would it be a threat? What's the magnitude of the threat? What's going on here? What are the details of it? And there were none. But I just say they're not in our case. But in that case, they had a trial. And they brought in two witnesses. One was a witness to show by using an ordinary PC, a person who was trained in computer databases, could find out who was involved on the registry, what their names were. But they didn't accept that because still the proof was deficient. What's the magnitude of this? How do we know? What are the details of it? Nothing was there. And what they did find, they found out that you had to be an expert to do it. But all these things were part of a trial and adversary proceedings. And there they are, even made a defendant go first because they had the burden of proving the affirmative defense. You don't get to the affirmative defense if you can knock out the claim, the initial claim. There's no need to get to it. If he didn't make the request and he wasn't denied, you don't go any further. But since that's already established, they must go forward and meet that burden of proof. So those are the basic elements that they have to get to. And now they come before the trial court and say that we want summary judgment for the reason you said in the order that refused judgment on the pleadings. And at no time, so they adopted a court order, which can't be done. I cited Rule 234 that says you can adopt pleadings, but you can't adopt an order. The cases say you have to affirmatively put out and plead. And pleading means we have to have it so we can have a trial on this. If there's no deterrent of motions, we should have a trial on this, and if that wasn't done. What was the basis of the judge's order? That it was an unwarranted invasion of personal privacy. Okay, and that is an exception under the statute, right? Yes, it is. Okay, so then the defendant moves for summary judgment on that basis, saying that it was an unwarranted invasion of personal privacy, right? Right, that's what he did. And you understood what the basis of the motion for summary judgment was, correct? Yes, I did. Okay, so there's no surprise to you when you're responding to the motion for summary judgment. There is, at that point, no, I did say, I did complain right there in our response that there has to be adversary testing, and we're not given that opportunity. We have to have a pleading. I don't think they used the word pleading at that time, but we have to have adversary testing, and that can only be done by having a pleading, setting forth what is the affirmative defense that gives rise to this.  Well, you can adversarially test it at the summary judgment. When they file their summary judgment motion, you can do whatever you think you need to do to challenge the allegations in their summary judgment motion, right? The allegations in the summary judgment motion were disincorporated of the order of Judge Daugherty in his findings on judgment on the pleadings. But you can read, so therefore you knew what those allegations were, right? I knew them, yes. Now, if you're not going to accept the part that he must plead it as a technical matter to let me know ahead of time. See, when I'm addressing these things, I'm always one step behind because what Judge Daugherty said in the motion for judgment of the pleadings was never brought out to my attention so I could address it before the motion and during the hearings on the motion. Judge Daugherty came at this at the end of that proceeding. Now, at the end of that proceeding, now I have something. Maybe that's a pleading. Now the judge has done the defendant's work. I don't think that should be confirmed by this court. I don't think it was an intentional situation by any means, but that's the result. They came in without a pleading, and they said, here, Judge, take a look at these cards and camera, if you will, and what do you think about them? You should look at them, make a determination. But right out of the stiffness that gives them the power, the power to do the in-camera hearing is the one that says the burden remains on the defendant to show that compliance with the act. So it's not our burden to do anything. It's our burden is to find out what's the problem, and then you can set up a question of fact such as, again, the devout and something. When you say something is that it's clearly unwarranted invasion of personal privacy, I have no facts there to deal with. They're all conclusions. Let me ask you this. What do you think that this would do for getting people to serve on jury duty in this state if we construe this act to say a guy is sitting in prison that's been convicted 13 years earlier of murder, and then he can request names, addresses, and all that kind of stuff 13 years later of the jurors who convicted him? First of all, he had a name. Do you think that would have a showing effect on jury duty in this if we construe it that way? I don't think so. First of all, they're under subpoena. They have to show up for one thing. They may or may not like doing jury duty anyway. The number of jury trials I've tried recently, a lot of times they've been out in the hallway on sidebar with the juror listening to their excuses, why they don't want to be on, and it has nothing to do with something of this magnitude. They just don't want to be on at all. So that's already there. But if that were the case, then under Lieber notice mentioned that in one of the cases that in certain parts of the FOIA say where somebody's name is not to be disclosed. The legislature specifically stated that. So if this were a problem, the legislature would then have to amend and just say and add this as an exception. But this is the state of the law as it is now, and it has to be interpreted not to defeat it, as I think your idea would suggest, but to allow the records to be shown. That is what the legislature has stated. That's the purpose of it. What is the purpose of the act to find out what government's doing behind our back, not to get personal information on citizens, but to try to find out what our elected officials are doing to making our lives miserable while we're sleeping? OK, well, we we volunteer during the trial that he wanted the information to see that would lead him to anything that would show that the jury was improperly impounded. If I might expand on that, I'm not sure we said this a record or not, but the idea is that they find that one person is at an address and they were never at that address. Will you ask for their voter registration? What if what are their voter registration cards that are on file now got to do with voter registration cards? It might have been on file 13 years ago. If there's a change that we would see that then we come up with a dead end. The mere fact that the information may or may not do him any good. There's the companion case you may be aware of where we asked where he got the transcripts. We finally had the transcripts turned over. And quite frankly, we're looking for prosecutorial misconduct. And so far in my reading of it, I don't want to blame the trial attorney on that. But my reading of it, there was not. Well, we wouldn't know that until we got to see it. And beyond the situation and the other things too about it. You talk about the government. I've also raised a proposition that these cards are what the government is doing to control the voting. Now, I would tend to think that maybe this wouldn't be the case anymore. But do the voter's cards ask a question of information that would be maybe given with education. Or maybe some qualification would be asked that you wouldn't be allowed to be a consideration on whether or not you could register to vote. We won't know that until we see the cards. That would be another way too that would have nothing to do with the jury situation. So, you know, you agreed that he could redact personal information from these cards, right? As a fallback position, yes. Okay. And what personal information could he redact? The name and address and date of birth? From the most extreme examples, redact everything. Show us the cards so we can see what type of information. You can pull the card off the Internet. You can walk down to the clerk's office and say, give me a voter registration card. If you want to play, you can pull it off the Internet. They're statutory. Okay. I don't know that. And we're not limited to that. We do not have to make that election. The Freedom of Information Act gives us an ancillary way of doing it. Under the transcript case, there was also that you could have gotten this from the criminal court and do it. Well, that didn't go anywhere because you had a right to what this statute gives you. If there are other alternative methods, then you don't consider that. There are times you consider alternative methods when you do get to the issue of privacy and whether it's warranted, that type of thing. That's in there. But we never got there because every time a reason for withholding, a reason for claiming these things to be personally private was offered, it was offered and concluded before we had a chance to respond to it. Counsel, you have two minutes. Mr. Kaplan, is the reason why the person who's applying for the records wants them an element of the proof or consideration in the statute? It might be, but first you have to have the case in proper status. The person has a right to know what is the defense put against them and spell it out. Not to have the judge do it for anybody and then say, I've made my determination. Now that you've seen what it is, we're going to move on to something else. We're through with that. You have to have it on the front as to what you're going to be faced with so you know what the issues of the case are. It's possible, and I never gave this much thought, but it's possible that you take the judgment on the pleadings, what the judge said, and put them in an answer. By the way, it happened, I think, in Southern Illinois, they did that. When they moved the summary judgment, they filed in the Department of Defense at that point. They realized it was deficient. They cured that defect. So when you look at this, and I digress. I lost my train of thought just for a second. Just bear with me for a second. All right, so in the judgment, there possibly, I can then say that when it comes to a summary judgment, then I can say, wait a minute. You're saying that telephone numbers is a threat? I think we're entitled to a trial on that, an expert witness to say whether it is or not. Do you need an expert witness to say, to give a convicted murderer the telephone number of the juror that convicted him? Do you need an expert witness to say whether that's an unwarranted invasion of the personal privacy? First of all, it's been over 13 years, and I think that if you want, first of all, the murder itself was he killed his wife, and from the bundle I got shot. It was a crime of passion. He found her cheating on him. No other record. He was a respected businessman up to that point in time. He's been clean ever since. One bad day? Pardon? You said he had one bad day? That's basically it. And the sentence he got, by the way, is a sentence he would give to a hit man who was professional, a murderer, for 75 years. I would suggest that maybe, like, I don't know, 30, 25, a much lesser sum would be more appropriate in this situation. So he's not the type of person. I'm sorry. I know Justice Schmidt is focusing on the fact that these are jurors that served. Of what relevance is the current voting record or the voting card of somebody who served 13 years ago? What relevance is that? Why is that important? To test whether the jury was properly evaluated based on where they live and vote now. It may be the same. It may not be the same. My concern is it has a chilling effect and is contrary to public policy for people to register to vote. Well, I would, if somebody would put that in the pleading, I would look at it, decide whether it should be admitted or denied because of my client, or maybe it should be stricken because the law says it's not a proper consideration. I don't know that. As you give it to me now, I did not know that. It was given to me in summary judgment or in the judgment of the pleadings. I'm always one step behind, and the law is quite clear that you have to plead it. And they didn't plead it. That's the law. Now, maybe it has to be that you can't. I don't think that's sufficient now for you to grant summary judgment within your powers of the 366A to order that to be turned over. But if that's not going to happen, then you have a right, and I would think it's a proper thing to do is to send it back. Make somebody plead that. Put it in the pleading. Go through the process. Give me a chance to say, yeah, you're right. Or, dear, well, I threw stuff out of there. In the other case, I got rid of the defendants who didn't belong. You streamlined the case. I'm willing to do that. If I'm going to lose, tell me now how I'm going to do that. And one reason I'm arguing so much is in the reply that we got from Mr. Herman, they didn't address the things I raised in my mind as to what was so important. They don't mention it. They don't come up with it. They don't say how to justify it. There is a concern that there's a veiled attempt here to embarrass, harass, make the jurors that served on that case uncomfortable now. And that's why I ask these questions. But you have done a very nice job of answering that question by stating it was not pled in that fashion. Just real quick, I would refer you back to the Illinois Department of Health. I think it's on page 21 or so. And it said there was evidence of need to evaluate the threat in that case. And if there's a threat here, there has to be an opportunity to evaluate that threat under an adversary proceeding, which required remand. It doesn't. The statute, the affirmative defense says an unwarranted invasion of personal privacy. It doesn't say imminent threat. They don't have to prove that there's an imminent threat. It's an unwarranted invasion of personal privacy. So what I'm curious about, so we go your way. We send it back and say, okay, plead your affirmative defense. Then what are you going to do? First I'll read it and see what it is. I've yet to read the speculate. What am I going to be doing? I think you know what it is. But I guess what I'm saying is, you know, that a case can die a death by guillotine or the death of a thousand cuts. But it ends up at the same place. And what are you going to do differently if you go back? So when he goes back, he pleads his defense, unwarranted invasion of privacy. What's that going to get you? Well, we have a further discussion. I have a right to discuss before the judge rule as to whether this is a personal private situation, address the concerns that you have to be raised and sure. And I'd be able to tell him that. And Lieber has said that there's a difference between something which is confidential and merely your own name and address, which is out there anyway. I'd have a chance to address those and see what happens. You had that right before. And you knew what the basis of the summary judgment was in that hearing. So nobody, you haven't raised the fact that somebody denied you the right to argue your case to the judge. All the decisions were made before I could argue to the judge. Didn't get a hearing on the motion for summary judgment? Sure. But he raised new things that never were talked about in the motion by either party. At the hearing on the motion for summary judgment? Right, right. Every time, I'm always one step behind, and that's why I want it on the front so I can see what it is. And I told Judge Daugherty that there's something that don't belong here. I get rid of it. And I just cut half that complaint out. It didn't matter. And I'll do the same thing here. I get rid of the other party. And I'll say, tell me what I'm going to lose. And I'll go ahead and I'll lose right now instead of going through, you know, having a thousand cuts. I want to know now. And I think I have a right to lay it out the way the Supreme Court says you have to lay it out. That is, you must plead it. It wasn't pleaded, so, therefore, we did not get a fair shake in that procedure. They can plead it. If they don't want to plead it, then it ends the case, too. If they do plead it, then address what's there. And the last fail-safe position would be that we're still entitled to the card just to see what the card looks like for no other reason. An empty card, if you would. Mr. Campbell, I'm sorry. Your time is up. You have five minutes on rebuttal to make any additional argument that you haven't had a chance to make. Mr. Herman, good morning. I'm Pat Herman. I'm the State's Attorney, Bureau of County Appearance on behalf of County Clerk for Honors. I think this is a pretty simple case. I don't expect to take my full 15 minutes. It appears that questions are to the court properly find that the disclosure of cards would constitute a clearly unwarranted invasion of personal privacy. The trial court made specific findings with regard to the personal privacy that were on the cards, full names, dates of birth, including the middle initial, the addresses, personal phone numbers, sex, and also race were on them. They made specific findings that these could lead to identity theft by anyone. And he also made mention that the information would be going back to the Department of Corrections. Whether this is an unwarranted invasion of personal privacy, Judge Doherty found that the jurors had said 14 years prior, 13 years prior, that the requester was the person that was the defendant was tried by those jurors. And the requester was still in the Department of Corrections and would be for a long time. I think the judge took into consideration the purpose of the Freedom of Information request, that the purpose is so the public can be informed of the actions and the policies of the government employees and our government officials. Myself, for instance. Other government officials elected or appointed or otherwise. Also, it says so that the public and a person can be fully informed or so they can be informed to fully discuss the issues and workings of the government to make their political decisions and their political votes. I think you have to factor all of those things into this case and determine that this clearly was an unwarranted invasion of the personal privacy. Also, wouldn't it be reasonable to determine if something was a warranted or unwarranted invasion of personal privacy, whether the person requesting the information could have any possible beneficial use of this? For example, attacking the jury veneer, which to my knowledge has never been able to be done 15 years post-trial. I would agree with that. And I think that is a factor that should be weighed in the requester's interest in the requested material as well. In this case, we do know specifically that the defendant wanted these 12 jurors cards because they had served on his juror. Had the requester requested. These are not juror cards.  I'm sorry. Had the requester requested my voter registration card, would that be an unwarranted invasion of personal privacy? There's less reason for him to have my voter registration card than there is these 12 jurors. The fact that these jurors sat 14 years ago, 13 years ago does, I think, balance into that as well. Could he ask for every voter registration card that's in the Bureau of County Clerk's Office? I think any of those under these circumstances would be a clearly unwarranted invasion of personal privacy, given the information that's on them. Mr. Herman, you had listed or the clerk's office had listed voter registration cards as public records. Is that correct? No. No. Mr. Tagliani attached that to his complaint. We deny that that was a public record. That document is not attributable to the county clerk erroneous. I think there's something in his complaint on another county clerk, but not county clerk erroneous. So it's not listed as a public record? No. Okay. I've never seen anywhere where it's been listed as a public record by statute or by county clerk, county clerk erroneous in this case. I am aware that I think it was the county clerk of Marshall County in the pleadings had listed it as public records in her county. Okay. Well, I mean, the fact that the statute uses the phrase unwarranted invasion of personal privacy certainly suggests that there might be warranted, you know, there might be a reason to get a public record that might be an invasion of personal privacy, and yet that invasion might be warranted by the facts of that case. Yes, sir. That there are warranted invasions and that there are unwarranted invasions. Yes, sir. We've had three of information requests for police reports. Those police reports contain names of individuals. Some of them may be specifically exempted if they provided the information to the police as a source of information. But let's say that they were the victim in the case. There would be an invasion of their personal privacy, but that may be warranted under the facts of the case. They were involved in a traffic crash. Their name is on there. There would be some invasion of their privacy, but they were involved in a crash. It may be a warranted invasion. I would say that everything is unwarranted. Mr. Herman, what do you do with Lieber? It says that names and addresses are not personal information. Lieber is before, I answered that, Justice, Lieber is before the Identity Theft Statute that came out that said what exactly personal information is. Under the criminal code, I think it's 720-516-G, the definition section there, lists all that information that is now personal identifying information that I believe is protected. It's a violation in some case for a person to possess that information depending on what they want to do with it. And I would think that Lieber needs to be interpreted or tempered with the new statute on identity theft. I think the fact that where this information is being used for is a factor. The press seeking certain information, I think, is a lot different than Mr. Taliani seeking the information in this case. Had Mr. Taliani requested whether these 12 voters were registered voters 13 years ago to serve his purpose, that information could have clearly been answered, and I think it could have been clearly answered without an unwarranted invasion of the privacy of those jurors. I think that information could have certainly been disclosed, if you will. But that's not what he asked for. He specifically asked for the voter registration cards, not any specific information on them. He wanted the voter registration cards. Well, I presume, I never turned a case in Bureau County, but like every other county, at the time you're selecting your jury of an error, each lawyer is provided with a copy of personal information on the jurors, their name, address, where they live, what they do, and that kind of stuff. So it was there at that time. That information was there, and I was an assistant state's attorney when that case was tried. The specific juror questionnaires have always been available to counsel to look at those things, their full name, their address, where they work. Much more information is contained on the juror questionnaire than is contained on the voter registration card. That information was certainly available to Mr. Taliani's attorney at the time the jury was selected. It's the practice of the circuit clerk to get those juror questionnaires back once the jury is in the path. But they were available during the ward hearing. That's correct. Again, I believe the judge balanced all these factors and made a determination that this would be clearly a warranted evasion of personal privacy. Mr. Kaplan suggests that there should have been a hearing on that regard or something for him to try that. As I'm sitting here, standing here, the only thing I think of is for the call of the county clerk, Hieronymus, to ask her what information is contained on those cards. Is the full name on them? Is the date of birth on them? Is their address, their phone number down the line? And she would have gave her answers to that. I think what we had, without Mr. Kaplan having benefited those cards, I don't know what adversarial testing would have actually been done. I would submit what happened here is better than that. We have a judge looking at them and doing an inspection, making a judicial decision of what is contained on those cards, and making his findings, and not just going by the testimony of a witness. That is where a meaningful cross-examination would have been possible. I don't know how there could have been more safeguards for Mr. Kaplan in this regard than for the judge to actually look at the cards that county clerk Hieronymus maintained would be an unwarranted invasion, make his own determination that what information was on there, and then to balance what was going on in the case and making his determination that it would be an unwarranted invasion. With regard to the issue of summary judgment, again, there's no factual issues that could have been determined after this case. Mr. Kaplan could move for summary judgment after the judge's ruling. So clearly, there are no factual issues remaining in the case as right for summary judgment. We had stipulated to the judge's findings in his order that that would be a further finding to court, and there was nothing remaining as to any factual questions. The judge, again, had made his findings that it would be clearly a warranted invasion of personal privacy of those 12 jurors, and as a matter of law, we were entitled to judgment if he properly ruled that. Any more questions? Thank you. Mr. Kaplan, any rebuttal? I don't want to be the pot calling the kettle black in this situation, because Lord knows I have had difficulty following your procedures with your time deals or getting things into court on time. I appreciate the courtesies that have been given to me by you, and I'm going to do so, and by Mr. Herman, by not objecting to it. But those types of situations do not deal with the substantive rights of the parties. Of course, somebody would make an objection to it, like we have to have a decision sooner than later, and there's something riding on, and this is time sensitive. That could have been a factor. Unfortunately, it wasn't. But other things like when you have rules of pleading, they're procedural, and you may want to extend the times, but I'm not sure that it would be good for this court to, in effect, say something against what the Supreme Court has already said, is that in a freedom of information case, you have to plead it. That's the rule, and it's substantive, because that advises the other side, namely me, for Mr. Tariani, what's going to happen before a judge has already ruled. Apparently, he thought it was a good idea when he ruled that way. Otherwise, he would not have ruled that way. Now I have to come back and say, now he becomes an advocate on the other side, because he has already made up his mind on those things before I had a chance to hear them. And that's why if the procedure is good, then that makes Mr. Herman do what he's supposed to do, put it down in writing, why is this an unreasonable invasion of privacy? How can we determine whether it's personal or confidential, or just something that's just mere identification? There's a case in my brief that talks about those very concepts. The Gibson case, I believe, and I think the Plumbers case has a contrast in that, and even Lever said, more than personal identification. So I have to know ahead of time what it is I'm going to be fighting for my client, and not to have the court announce it as the law of the case before I had a chance to address it. I don't think that's the proper way to go, and it could be obviated if they just follow the rule and say, plead it, let them take a look at it. Maybe he'll go away. Maybe he has something to say on the issue. But plead it so we know what we're talking about before we have arguments before the judge rules. Well, did the defendant file a written motion for summary judgment? The response was allowed to stand for summary judgment. It's a cross-motion summary judgment. And that was based upon the fact he never set forth in court what it is he had to prove. The concept was there that he has to assume the burden of pleading and proving. I don't know if it's phrased exactly that way, but that was the gist of it. He hasn't done it, and he can't do it. I'm not sure I understand your answer, because did the defendant file a written motion for summary judgment? Was there a written motion? The defendant filed a written motion, and the written motion is kind of short, and it was just a... It's on page 36 of your appendix. 36? You're going to have to read it, John. All right. The thing is that it's based upon the pleadings filed in this matter. Well, the pleadings filed in that matter were his denial that it was a public record, and our statement that it was. Okay, nothing there about the issue of privacy is in there. And because the court has found that voter registration cards are exempt under 74B, that judgment should be granted in favor of the defendant. But the court had said later, and we said in the status quo, they're saying that that was just limited to the motion for summary judgment. Otherwise, it would not have gone further. He would have entered judgment at that time, one way or the other, probably. Or I would have given up if that were the case. So it's very... At no time do they ever come out and say, under the Baldwin case. That's where you have to give a clue. You can't just cite the language of the statute. You have to give some clue as to how this applies. And that was never said. He's saying based upon the pleadings, maybe we have a question of the fact this is a public record or not. He denied that it was a public record, but he never addressed the fact, he never addressed the exhibit that was attached to it. But even so, I think it's immediate to call for the reason I have cited Stern in my brief. It's a public record. I don't think there's a question about that. The only question is whether or not he has pled, whether it be on removal, whether or not it be an invasion of privacy, to shortcut everything, whether it be an invasion of privacy, and to raise that, he must do it. The Supreme Court says he has to do it. And I don't think you have the right to excuse that, no matter how chilling the fact may or may not be, because the worst case scenario goes back to the court, and then he pleads it, and then Judge Doherty can re-examine the matter based upon whatever you might say in your opinion, and based upon the fact now that he's actually said something. If I may, chilling the fact is a great concern I can see, and I'm not closing my eyes to it that somebody might feel this way, but as a matter of how we're supposed to go doing this, it's not whether we think it is or might not be. Chilling the fact under those circumstances is a question of fact. There may be some, you know, it's just some guesswork in there, and it's speaking opinions, but it's still a question of fact as to whether it had a chilling effect. So do you think reasonable people could disagree about whether it's a good idea to send the name and address and phone number to a convicted murderer up over there at the D.O.C. of the, you know, 15 years later, the jurors are convicted? Everybody who signs the registration card either knows or probably should know that that person is subject to jury duty, and all that information was already, much of the information was already disclosed to Mr. Taliani at the time of his trial. This part of his record shows that he tried to get that information from the prior attorney who lost the file in the move, and that's when he had to come over here to find out one of the ways to do it is coming over here to do it. It's already been, you know, it's already been given to him, and he gave the names to the clerk to begin with. All right, so if you think it's going to be chilling, and we have to go down that, it's not a question of fact, we still come down to is he entitled to see the current voter cards completely redacted so he knows what the people are being asked to register? Does he have that right? Independent, no threat to anybody, no threat to any jurors, he just wants to see what is the government doing when it makes people sign this card to make them vote? Well, then why doesn't he walk down, or his attorney walk down the hall to the county clerk's office and say, please hand me a voter registration card, and like every other citizen does when they want to go register to vote? I've never, I didn't do that in Bureau County, I've never been there, but I did ask that, and they didn't want to give me any information. You're on the Internet. Yes, I am. My client's not. He can't do the walking. This is his case, not my case, and I don't think it's appropriate to say, you must exercise your liberty in this particular way, and if you don't use this, then you're stuck. He doesn't have Internet. He has library privilege, that's the best that he has, and the law says, and as I understand some of the theory that would be fair to Mr. Herman, it is to curtail and it is to avoid production of this when the statute says you ought to be thinking larger to allow production, and nothing else. How long can I have a chilling effect? How do you measure it? I mean, is this just something we pick up because we all know that's a concept we have in law, or is there some empirical evidence to support that one way or the other, and if there is, Mr. Herman has the burden and can very well compensate. Look at all these situations here where every time we gave this voter registration information to somebody, they avoided jury duty. Not speculation, but some evidence. They have an adversary testing of it. That has been completely denied throughout this process. We're always one step behind. We never had our trial, and if you look at the Southern Illinois v. Department of Justice. Well, you moved for summary judgment, didn't you? Pardon? You didn't want a trial. Didn't you move for summary judgment? Because from our point of view, there was no— they could not sustain the burden of proof. They had not pleaded anything. They had not explained what it meant. Nothing. We can talk about Bowden. We talked about you can't make conclusions without the facts done at the end. Is this what the Williams v. Klinkar, I think it was? You can't say it is because you say it is, and that's what's happening now, and if we should say now that it is going to be a chilling effect, it's because we say it's a chilling effect without any other examinations as a rival by law. Counsel, I'd like to direct you to that page 36 of your appendix, the motion for summary judgment prepared by Mr. Herman. I'm wondering if it didn't put you on notice of what exactly the basis of their motion was because they say based on the pleadings filed and the ruling issued by the court on August 19th, clearly it's a pretty detailed order and it makes findings that it could expose the citizens to intimidating and harassing direct contact from prison by phone or by letter. Doesn't that put you on notice that this is why they're asking for summary judgment? Yes. When do I get my trial on those issues? You didn't want a trial. Isn't the law that when you file a cross-motion for summary judgment, you have confessed that there is no genuine issue of material fact? You cannot file a motion for summary judgment, Counsel, and then come back on appeal and argue there was a genuine issue of material fact. I'm saying that they wrote this down, and in response I addressed what he had said and why it could not apply, but I'm still one step behind. I did do that, and I'm saying that when you take all the considerations of why what you say doesn't apply, you have nothing left. And the whole thrust of everything is that they have not ever stated with reasonable specificity as required by case law what the exemption is to make a subject to adversary testing. They haven't done that, and since the only pleadings is that we made a request for a public record, they denied it. That's all we have to show, and they have never shown and never come up and satisfied their burden on the Supreme Court rulings that all that is left is for summary judgment on the complaint because there is no affirmative defense. Now, without affirmative defense, they are not entitled to summary judgment, not entitled to ask for summary judgment. The case doesn't belong there. It went there in complete error. Now, maybe you overlooked something on the switch. That's possible, but if you look at it now, where we are now, and what I finally got to start talking to the court about is that we don't have him stating what is there about this situation that makes it private or unwarranted. What is it about it? And the court said that we didn't plead that. We didn't argue that. Of course not. It's not our burden to do it. It's a misapplication of law, a misstandard of law. Under Callinan, from this court, that's why they should be reversed because they were arguing attorneys for each and what statute they had to repeal. It was a wrong standard of law. And for him to come out and say that, his mindset is, we didn't do things. We didn't have an obligation to do them, yet he's holding us to that. So, you know, that's what... But if we had an affirmative defense pleaded stating what the situation was, the issue would have been properly joined and we could have done something about it. Mr. Kaplan, your time is up. Thank you. It's been a pleasure. Thank you. I would like to thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.